LYNCH and wife *vs.* LIVINGSTON.

A commissioner of deeds, in taking an acknowledgment of the execution of a
deed, acts ministerially, and not judicially; and it is not therefore any valid
objection to his act that he is related to the parties.

The county clerk, in certifying to the official act of the commissioner, and the
genuineness of his signature, also acts ministerially, and that act may be per-
formed by deputy; it being neither a judicial act nor one personal to himself.

A deed not good as a lease and release, by reason that the grantee is not in
possession, nor valid as a covenant to stan. seised to uses, because there is no
consideration of blood or marriage between the covenantor and covenantee, may
yet be good as a bargain and sale, notwithstanding the granting words are
" remise, release, and quit-claim," if there is a pecuniary consideration expressed
in the deed, and there is an evident intention to convey *in præsenti* the whole
of the estate of the grantor.

THIS was an action of ejectment, tried at the New-York
circuit in December, 1846, before S. BARCULO, circuit judge.
On the trial the following facts were admitted, as if proved:
" That Joanna Livingston, wife of Peter R. Livingston, died in
1829, having never had any children. That she had four broth-
ers and five sisters, viz. Mrs. Janet Montgomery, who died be-
fore Mrs. Livingston, leaving no descendant. Robert R. Living-
ston, who died before Mrs. Livingston, leaving children and
grandchildren, some of whom are now living. Mrs. Margaret
Tillotson, who died before Mrs. Livingston, leaving three chil-
dren, to wit, Robert Tillotson, John C. Tillotson, and Janette
M. Tillotson, now Mrs. Lynch, who are yet living. Mrs. Gar-
retson, who is now living. Henry B. Livingston who survived
Mrs. Livingston, and is since dead, leaving one daughter, who
is now living. John R. Livingston, who is now living. Ger-
trude Lewis, who survived Mrs. Livingston, but is since dead,
leaving one child who is now living. Mrs. Armstrong, who
died before Mrs. Livingston, leaving five children who are now
living; and Edward Livingston, who survived Mrs. Livingston,
but is since dead, leaving one daughter who is now living."
The counsel for the plaintiffs produced and read in evidence a

transcript from the records of the office of the register for the city and county of New-York, duly certified by the register, purporting to be a copy of a certain deed from Margaret Livingston to Joanna Livingston her daughter, dated the first of January, 1790, by which, in consideration of natural love and affection, and also of the sum of ten shillings, the grantor conveyed to the grantee, certain lots situated in the city of New-York, and in the said deed particularly described, " to have and to hold all and singular the above described premises with the appurtenances, unto the said Joanna Livingston and her heirs, to the only proper use, benefit and behoof of the said Joanna Livingston, her heirs and assigns forever, saving and reserving nevertheless to the said Margaret Livingston during the term of her natural life, the use of the hereby granted and bargained premises, and the rents and profits of the same, together with every remedy for the recovery of the said rents which she would have had if these presents had not been executed ; and also the rights of leasing the whole or any part of the said premises for any term not exceeding fourteen years ; and the said Margaret Livingston for herself and her heirs doth covenant and grant to and with the said Joanna Livingston and her heirs, in manner and form following, that is to say : that if the said Margaret should at any time procure a grant from the mayor, aldermen and commonalty of the city of New-York, for any water lot or lots adjoining to the said water lots hereby granted, bargained and sold, that immediately on the obtaining the said grant, the said Margaret Livingston and her heirs shall be and stand seised of the same to the use of the said Margaret Livingston during the term of her natural life, and after the death of the said Margaret Livingston, her heirs shall stand seised of the same to the use of the said Joanna Livingston and her heirs forever. Provided always that it shall and may be lawful to and for the said Margaret Livingston, by writing under her hand and seal from time to time to revoke this indenture of bargain and sale, and the estate hereby created, or to alter any of the uses hereby limited and appointed, or to limit, make and appoint any other or new uses or trusts touching the premises or any part thereof."

It was admitted that the said Margaret Livingston died in the month of July, in the year 1800, and that thereupon Miss Joanna Livingston, the said grantee, went into possession of the premises, and afterwards married Peter R. Livingston, the defendant in this cause. The counsel for the plaintiffs also produced and read in evidence a transcript from the records of the office of the register of the city and county of New-York, duly certified by Samuel Osgood, register, purporting to be a copy of a lease from Peter R. Livingston and Joanna his wife to Caleb Horton, dated the 1st day of April, 1811, of a portion of the premises embraced in the deed `from Margaret Livingston, for the term of twenty-one years, at the yearly rent of $500.

The defendant's counsel admitted that the defendant was in possession of the premises in question as landlord, at the time of the commencement of this suit, and the counsel for the plaintiffs here rested their case. The counsel for the defendant offered evidence assumed by the parties hereto for the purposes of this case to be prima facie sufficient to establish the following points : 1. That there had existed in the year 1825, two papers, purporting to be deeds; one purporting to be by Peter R. Livingston and Joanna his wife, to Robert James Livingston, and the other purporting to be by Robert James Livingston to Peter R. Livingston, and each purporting to embrace and convey among other property, the property in question in this suit. 2. That in the year 1828, the dwelling house of the said Peter R. Livingston, in which he was then living, and all his private and title papers, were destroyed by an accidental fire, and that since said fire the said papers purporting to be deeds had been diligently searched for by the proper persons, and in all places where, if they existed, they would have been found, and could not be found. 3. That the original records in the office of the register, in and for the city and county of New-York, mentioned in two transcripts then produced and offered in evidence, and which were thereinafter set forth, were in the hand-writing of one Delanoy, now deceased. 4. That said Delanoy, at the date of the record in such transcripts mentioned, was a transcribing clerk in the office of said register, whose duty it was to trans-

cribe into the books of records provided for that purpose the . instruments received at said office for record, and that it was the practice of said office, and the duty of such transcribing clerk, to compare the record in said books of all instruments so received for record, and recorded with the instruments so received for record, before such records were presented to the register for his signature, and that the original records in said books from which the said two transcripts were taken were subscribed in the proper hand-writing of J. W. Lent, who at the date of such record was the register in and for the city and county of New-York, and who was then living, and is now dead. 5. That the said transcripts were in the hand-writing of one James McMurray, a former transcribing clerk in the office of the said register, and now also deceased.

The counsel for the defendant admitted that Francis A. Livingston, the commissioner named in the said two original records and transcripts, and admitted by the plaintiff's counsel to be such commissioner and to be deceased, was, at the time of the official acts therein stated to have been performed by him as such commissioner, a nephew of the said Peter R. Livingston, and Robert James Livingston in said transcript named, and that neither said Peter nor Robert had any issue, and that he the said Francis A. Livingston, as such nephew, was presumptively one of the heirs at law of the said Peter R. Livingston, and Robert James Livingston. And thereupon the said defendant offered in evidence, and as a full bar to the action of the said plaintiffs, the said two transcripts, purporting severally to convey the premises in question, with other property, and also the said original records so copied as aforesaid, as contained in the books of said register, from which the said transcripts were taken, and which records and transcripts thereof severally purported to be true copies of said alledged original deeds.

The first deed was made the 16th day of March, 1825, between Peter R. Livingston and Joanna his wife, of the first part, and Robert James Livingston of the second part, and recited that whereas the parties of the first part were seised in right of the said Joanna of all the premises therein described, and that

it was her wish and desire to vest the fee simple thereof in her husband, the said Peter R. Livingston ; whereupon the parties of the first part, for and in consideration of purposes above expressed, and that the said Robert James Livingston should and might reconvey the premises to the said Peter R. Livingston in fee simple, and also for and in consideration of the sum of one dollar to them in hand paid, by the said party of the second part, the receipt whereof was thereby acknowledged, remised, released and quit-claimed the premises in question, and all the other real estate of the said Joanna, unto the said party of the second part, and to his heirs and assigns forever. This deed was acknowledged by the grantors, on the 18th of March, 1825, before Francis A. Livingston, a commissioner of deeds. A certificate, purporting to be made by Jacob Van Ness, clerk of the county of Dutchess, and clerk of the court of common pleas of Dutchess county, was annexed to said transcript, certifying that Francis A. Livingston, on the day when the said acknowledgment was made, was a commissioner for said county of Dutchess, and duly commissioned and sworn, and as such commissioner duly authorized by the laws of said state to take the proof and acknowledgment of deeds and other instruments in writing, and that the clerk was acquainted with the hand-writing of the said Francis A. Livingston, and verily believed the signature F. A. Livingston, subscribed to the said acknowledgment, was the proper hand-writing of said Francis A. Livingston. This certificate was signed " Jacob Van Ness, Clerk. By Jno. I. Pells, Dep. Clerk," and the seal of the county was affixed to it.

The second deed was made on the same 16th of March, 1825, between Robert James Livingston of the first part, and Peter R. Livingston of the second part, and reconveyed to the grantee the premises embraced in the former deed. This deed was acknowledged before the same commissioner, and a clerk's certificate in the same form, and signed in the same manner, as in the case of the first deed, was annexed.

The defendant showed that the said Peter R. Livingston had been in uninterrupted and undisputed possession of the premises claimed in this suit, exercising acts of ownership in letting the

Lynch *v.* Livingston.

property and otherwise, claiming title in fee, since the death of his said wife Joanna in 1829, until the commencement of this suit, and offered to show that he had always claimed such title under said deeds; which offer was objected to by the plaintiff's counsel, and overruled by the judge; and the defendant's counsel excepted to the decision.

The plaintiffs, by their counsel, objected to the reception of the said transcripts or records, or either of them, in evidence, on the following grounds: (1.) That they did not appear to have been authenticated as required by law, inasmuch as there was not subjoined to the certificates of the acknowledgments of such deeds, a certificate under the hand and seal of the clerk of the county of Dutchess; that the commissioner was, at the time of taking such acknowledgment, duly authorized to take the same, and that he, the said clerk, was acquainted with the hand-writing of such commissioner, and verily believed the signature to such alledged certificate of acknowledgment to be the proper hand-writing of such commissioner; and that the pretended clerk's certificate on which such alledged record was made, was insufficient to authorize such record, in each of the following particulars, that is to say: It does not certify an authority in said commissioner to take the particular acknowledgment in question. It does not certify touching the deputy clerk's own knowledge of the commissioner's hand-writing, or his belief concerning the signature to the commissioner's certificate, but refers to the knowledge and belief of the clerk himself in these respects. It purports to be made by a deputy of the county clerk for and in behalf of his principal; whereas, the clerk of the county himself, in person, should have made, and was alone authorized to make, a certificate in the premises to entitle such alledged deeds to be recorded in the city and county of New-York. (2.) If such transcripts were otherwise admissible, that the said Francis A. Livingston, at the time of the alledged taking and certifying of the said alledged acknowledgment by Joanna Livingston, of the execution by her of the said alledged deed, before him as a commissioner, was incompetent, by reason of his consanguinity to the said Peter R. Livingston and Robert

James Livingston, to take or certify such alledged acknowledgment by the said Joanna. (3.) That there was no evidence that such deeds were in fact the deeds of the said Peter R. Livingston and his said wife, and of the said Robert James Livingston respectively, or of any of them, or had ever been signed, sealed, executed, or delivered by them or any of them. (4.) That the said two transcripts, if admissible, were not sufficient to bar the action of the plaintiffs, or to show that any title had passed from Joanna Livingston ; for that the first of such transcripts contained only what purported to be a mere release, and the said Robert James Livingston was not at the time of the making such alledged deed of release to him, in possession of the premises in question, or any part thereof, and had not any demise of or term in, or other right or interest in the premises in question, or any part thereof, or any lease thereof, on which the said release could operate, and that the deed purporting to have been executed by the said Peter R. Livingston and Joanna his wife, could not operate as a grant or as a bargain and sale, and that the same was also wholly inoperative and void upon its face, because professing to be in effect a conveyance from the wife to her husband. The counsel for the defendant thereupon offered to show that there had existed a general custom or usage in the offices of the clerks of the counties of the state of New-York, from the passage of the law in March, 1818, requiring the certificate of acknowledgment of a deed or mortgage to be recorded in another county than that in which such acknowledgment was taken, to be authenticated by a certificate under the hand and official seal of the clerk of the county in which the judge or commissioner taking the acknowledgment should reside, to the time when the revised statutes went into effect in the year 1830, as well as from the last mentioned period to the present time, for the deputy clerks appointed by the county clerks, to make and sign such required certificates of authentication in the names of their respective principals in the manner and form in which the certificates now in question, and objected to by the plaintiffs' counsel, are made and subscribed, and that it always has, during the period aforesaid, been the general cus-

Lynch *v.* Livingston.

tom or usage in the recording offices, as well the office of the register in and for the city and county of New-York, as the offices of clerks of counties, to record deeds upon such certificates, and that very many deeds have been recorded in such counties and in the city and county of New-York thereupon. And the defendant's counsel insisted, 1. That the certificates authenticating the certificates of the acknowledgments of the deeds in question, were sufficient in law to authorize the same to be recorded, and that the said records and the transcripts thereof were therefore properly admissible in evidence for the reasons— (1.) That by law the deputy clerk who signed the certificates in question, had power and authority to make and to sign the same in the name of the clerk his principal, by himself, as deputy, in the manner and form in which the same were made and signed; and in the name of his said principal, as well as in his own name, to do and perform whatever his said principal might lawfully do and perform in the making of such certificates. (2.) That the said certificates contain and express all that by any law or statute in existence at the time the same were made it was necessary that such certificates should contain and express, and that it was not necessary that the same should have certified an authority in the commissioner named therein, to take the particular acknowledgments in question. (3.) That it was not necessary that the said deputy should have certified in said certificates, as to his own knowledge of the commissioner's hand-writing, or his own belief concerning the signature to the commissioner's certificate, though he had power, and it was legally competent and proper for him so to do; but that he had full power and authority by law as deputy clerk, to certify in the name of the clerk, to the knowledge and belief of the clerk in these respects, and that such certification is in law the act and deed of the clerk, equally as though made and done by the clerk himself, and it was not necessary that the said clerk should himself, in person, have made such certificates, nor was he alone authorized to make the same. That if it were necessary to sustain the record, the court would intend it to be the knowledge and belief of the deputy himself. 2. That the consan-

guinity of Francis A. Livingston, the commissioner, to Peter R. Livingston and Robert J. Livingston, did not disqualify him from taking or certifying the acknowledgment of the said Joanna, as contended by the plaintiffs' counsel. 3. That the deed from Peter R. Livingston and wife, to Robert James Livingston, was a good and perfect deed, operating as a bargain and sale or grant, and not as a mere release, and required no antecedent lease to, or term in, or possession on the part of the grantee, to support it, and was effectual in law to convey, and did convey, the title and the whole title, to the said grantee, and out of the said grantors, and that such its legal operation and effect was in no wise varied or impaired, nor was the said deed inoperative and void on its face as contended by the counsel for the plaintiff, by reason of the recital contained in it, of the object and intent for which the same was made. 4. That the said original records were, under the evidence, admissible. 5. That sufficient evidence of the existence and loss of said deeds had been given, to entitle the said records to be admitted in evidence. 6. That if the said transcripts were not admissible, because the certificates authenticating the acknowledgments of the deeds were not sufficient to authorize the same to be recorded, for the reasons alledged on the part of the plaintiffs, then the evidence of usage offered by the defendant should be received. 7. That the uninterrupted and undisputed possession of Peter R. Livingston, claiming under the deeds in question, from the death of his said wife in 1829, to the commencement of this suit, and exercising acts of ownership as aforesaid, raised a presumption of the due execution and delivery of the deeds, and coupled with the evidence so given, entitled the defendant to read said records in evidence to the jury.

The circuit judge declared and delivered his opinion that neither the said transcripts nor the said original records were admissible in evidence. That there was nothing in the evidence to show that Delanoy or the register had any knowledge of the hand-writing of any of the parties or officers on whose supposed act the record was made, and that John J. Pells, as deputy clerk of the county of Dutchess, had no authority by law to make or

sign the certificate on which the record was made. And that the evidence of usage so offered by the defendant's counsel was inadmissible. And that the said records having been made by the said register without proper certificates from the county clerk were void, and that neither such records nor the transcripts thereof could be admitted in evidence, for any purpose, and that the uninterrupted and undisputed possession of Peter R. Livingston, under such claim of title, from the death of his wife in 1829, to the commencement of this suit, did not raise the presumption of the due execution and delivery of said deeds, nor coupled with the evidence given on the part of the defendant, entitle the defendant to read said records in evidence to the jury. And he further decided that the second objection to the admissibility of the deed from Peter R. Livingston and wife to Robert James Livingston, was well taken, by reason whereof the said deed could not be admitted in evidence. And also that the third and fourth points so taken by the plaintiffs were well taken, and that if no further evidence was offered, the plaintiffs were entitled to a verdict, even if such transcripts were to be admitted in evidence. To each of which said decisions and opinions of the circuit judge the counsel for the defendant excepted.

The said issue was then submitted to the jury, and they found a verdict for the plaintiffs for one twenty-fourth part of the premises claimed in fee. The verdict was taken subject to the opinion of the supreme court on a case to be made.

*James Lynch,* in person, and *C. O'Conor,* for the plaintiffs. **I.** The original records of the alledged conveyances relied upon by the defendant, or the transcripts thereof, were not admissible evidence. ( *Withers* v. *Baird,* 7 *Watts,* 228. *Jameson* v. *Jameson,* 3 *Wharton,* 469. 2 *R. S.* 274. 21 *Wend.* 63. 19 *John.* 172. *Bonam's case,* 8 *Coke,* 18. 13 *Mass.* 339. 14 *Vin. tit. Judges.* 2 *Roll. Ab.* 93. *Co. Lit.* 141 *a. Bacon's case, Dyer,* 22.) (1.) The commissioner, Francis A. Livingston, was the nephew and heir at law of the grantees, and therefore was not competent to take the alledged acknowledgments. His duties

are clearly judicial. (1 *R. L. of* 1813, *p.* 359. *Id.* 369, §§ 1, 2. 1 *Hill,* 654. 5 *Paige,* 492, 9 *Id.* 205. *Pierce* v. *Sheldon,* 13 *John.* 191. *Eggleston* v. *Smiley,* 17 *Id.* 133. *Beman* v. *Whiply,* 7 *Shep.* 420. 21 *Pick.* 108.) The proceedings of a judicial officer who is incompetent in the particular case, from interest or consanguinity, are merely void, as it respects persons who cannot obtain a review thereof, by appeal or otherwise. (2.) The *deputy* clerk of the county of Dutchess had no authority to certify to the genuineness of the commissioner's certificate ; nor had the register of New-York any authority to make a record without a certificate of such genuineness ; and, consequently, the record was absolutely void. The record is void if the proper clerk's certificate was not annexed. (*Beall* v. *Lyon,* 6 *Har. & John.* 351. *Laws of* 1818, *p.* 44, § 5. *Stevens* v. *Brown,* 3 *Verm.* 420. *Murray* v. *Johnson,* 3 *A. K. Marshall,* 220. *Depeyster* v. *Horton,* 2 *Bin.* 40.) The course of legislation on the subject of deputies to clerks of counties, is conclusive that the authority claimed for the deputy in this case does not exist. (1 *K. & Rad. p.* 357, § 19 ; *see Index, p.* 634. *Christman* v. *Floyd,* 9 *Wend.* 342. *Act for amendment of law,* 1 *R. L. of* 1813, *p.* 523, § 19. *Repeated in act concerning com. pleas, &c.* 2 *R. L.* 149, § 17. *Laws of* 1815, *p.* 88, § 2. 1 *R. S.* 1830, *p.* 376, § 55, *as to Suffolk Co. Id.* § 56 *to* 59. *Norton* v. *Colt,* 2 *Wend.* 250. 1 *K. & Rad.* 206, § 5. 2 *John.* 73.) Upon the general principles of the common law, the clerk could not delegate to his deputy the duty of verifying the commissioner's certificate. (*State* v. *City of Buffalo,* 2 *Hill,* 438, *and cases cited. Earl of Shrewsbury's case,* 9 *Coke,* 48, § 2. 2 *John.* 71. *Kemp* v. *Porter,* 7 *Alab. Rep.* 138. 16 *Peters,* 71.) If the deputy had power to officiate in this verification, he should have certified that he, the deputy, was acquainted with the handwriting, and verily believed it to be genuine. Evidence of an erroneous usage could not be received to countervail the positive injunction of the statute ; and, therefore, the evidence offered as to the practice in county clerks' offices, was properly rejected. The court will inform itself of a usage, not leave it to a jury. (5 *Hill,* 438. 2 *John.* 362. 15 *Wend.* 562.) Evidence of less

than twenty years' possession, claiming title under the alledged deed of a married woman, could not be received as a substitute for proof that such alledged deed was executed and acknowledged as required by law ; especially as against the claimant in this case, to whom, by reason of her coverture, no *laches* can be imputed. (*Livingston* v. *Tenbroeck*, 16 *John.* 22. *Duffield* v. *Brimley*, 1 *Rawle*, 91. *Bradstreet* v. *Pratt*, 17 *Wend.* 44.)

II. The alledged deed of Peter Livingston and Joanna his wife, if it had been fully proved, was insufficient to divest her estate, or to prevent a recovery by her heirs at law. (1.) There was no precedent lease, or possession by the releasee ; and consequently it was void as a release. (2.) It could not take effect as a covenant to stand seised, for want of the appropriate consideration. (*Jackson* v. *Sebring*, 16 *John.* 578.) There was no blood consanguinity between Joanna L. and Robert James Livingston. (*Counsel arguendo*, 1 *Keen*, 799 ; *S. C. note b.*) (3.) It could not take effect as a bargain and sale *for want of appropriate granting words*. (4.) It is in legal effect a grant by the wife to the husband, and such a conveyance is absolutely void. (2 *Tho's Coke*, 505. *Co. Litt.* 112 *a*. *Id.* 3 *a, n. b*. 2 *Miles*, 280. 1 *Greenl.* 398. *Jackson* v. *Stevens*, 16. *John.* 110.)

III. Judgment should be for the plaintiffs.

*John Slosson* and *George Wood*, for the defendant. I. The certificates authenticating the certificates of the acknowledgment of the deeds in question, were sufficient in the law to authorize said deeds to be recorded, although they were not made by the county clerk himself, but were made by the deputy clerk, and in the name of his principal, and although they do not certify an authority in the commissioner to take the particular acknowledgments in question ; and the records of said deeds and transcripts of such records so offered in evidence by the defendant's counsel, should have been received in evidence by the judge, as good and sufficient *records*. (1.) The act of making these certificates was an act within the power of the deputy to perform, since it was a purely *ministerial* and not a judicial act. (*Midhurst* v. *Waite*, 3 *Burr.* 1259. *Vin. Ab. tit. Office, &c. I.* (7.)

*Bac. Ab. tit. Offices, A. H. L.    Wood* v. *Rose,* 11 *Mass.* 271.
*Tillotson* v. *Cheetham,* 2 *John.* 63.    *Tompkins* v. *Sands,* 8
*Wend.* 462.    *Levett* v. *Farrar, Cro. Eliz.* 244.    *Bulst. Rep.
part* 3, *p.* 78.)    (2.)  The powers of the deputy at common law
extend to *all* the ministerial duties of his principal, whether ex-
isting at the time of his appointment, or created afterwards,
which are not fiduciary in their own character and personal to
the principal, or are expressly made personal to him by stat-
ute; nor can the principal abridge these powers.  *(Morton* v.
*Simmes, Hobart's Rep.* 12, *in connection with* 13 *Ed.* 1, *ch.* 14,
*Stat. at Large, vol.* 1, *p.* 92.    *Boucher* v. *Wiseman, Cro. Eliz.*
440.    *Parker* v. *Kett,* 1 *Salk.* 96; *S. C.* 12 *Mod.* 466.    *Vin.
Abr. tit. Office, &c. L.* [2.]    *Bulstrode* v. *Gilburn,* 2 *Str.* 1027.
*Jackson* v. *Collins,* 3 *Cowen,* 95.    *King* v. *Bedford,* 6 *East,* 356.)
(3.)  None of these qualifications apply to the duty in question.
It was not a duty fiduciary in its character, and *necessarily per-
sonal* to the principal, since the acquaintance with the hand-
writing of the magistrate, is a knowledge to be gained and a
function to be performed in the course of *official* duty.    The law
does not require that the principal officer shall be selected on
account of any *personal* knowledge of the hand-writing of the
magistrates of the county, that he may possess at the time of
his appointment.    Nor is the acquiring of this knowledge, nor
the knowledge itself when acquired, more difficult, peculiar or
fiduciary in its character, than the knowledge to be obtained
and necessary to the proper performance of many other official
duties, which nevertheless the deputy may perform in the name
of his principal.  The hand-writing of the commissioner is a
matter of *record* in the clerk's own office, and the authentication
required by the statute is manifestly an *official* authentication
by the officer who has the *legal custody* of the *oath of the com-
missioner,* which is, as to others, the evidence of his appoint-
ment.    It is *not made personal by the statute, (Laws of* 1818,
*ch.* 55.)  The statute does not require it to be done by the *per-
son* holding the office of clerk, nor by the clerk *in person,* but
by the *officer,* by his *name of office* and under his *official seal.*
It could not have been in the contemplation of the statute that

the duty should be always performed by the clerk himself, since it makes no provision for the contingency of his absence or sickness, and as the act to be performed must be of frequent occurrence in the regular routine of official duty, it would prove injurious to the rights of property, if on the happening of either of those contingencies, the duty could not be performed. (4.) Since, then, the deputy had power to make the certificates in question, it was proper that they should be expressed and subscribed in the name of the principal, although in so doing the deputy certified to a knowledge and belief, as belonging to the principal, which was nevertheless his own. He certifies to his own knowledge. The objection to the certificates on this account is captious and unsound, if in fact the deputy had the power which we have shown he had to make the certificate at all. (12 *Mod.* 468, *and* 1 *Salk.* 96, *before cited.*) (5.) Such being the power of the deputy, the certification thus made, was the act and deed of the clerk, [within the meaning of the statute,] equally as though the same had been made by that officer himself. (*Lane* v. *Cotton, Salk.* 19.) The act of the deputy may forfeit the office to the principal. (6.) It was not necessary that the certificates should have expressed an authority in the commissioner named therein, to take the particular acknowledgments in question, as contended by the plaintiff's counsel; a substantial compliance with the statute being all that was necessary. (*Jackson* v. *Gumaer,* 2 *Cowen,* 552. *Cowen & Hill's Notes,* 1247. *Meriam* v. *Harsen,* 2 *Barb. Ch. Rep.* 268.)

II. The evidence of *usage* offered by the defendant's counsel, should have been received, as explanatory of the true and practical construction of the act, authorizing these certificates to be taken. Such usage controls and settles the practical construction of the said act, and this court will *judicially* take notice of the same. (*Delancy's Lessee* v. *McKeen,* 1 *Wash. C. C. R.* 525 ; *S. C.* 5 *Cranch,* 32. *Davey* v. *Turner,* 1 *Dal.* 11. *Lloyd* v. *Taylor, Id.* 17. 4 *Halst.* 225. *Jackson* v. *Gumaer,* 2 *Cowen,* 552. *McFerran* v. *Powers,* 2 *Serg. & Rawle,* 106. *Troup* v. *Haight,* 1 *Hopk. Ch. Rep.* 239. *Meriam* v. *Harsen,* 2 *Barb. Ch. Rep.* 369, 70.)

Lynch *v.* Livingston.

III. But in any event, the said original records, even if inadmissible as records, were, under the evidence, admissible to show the contents of the original deeds. (*Jackson* v. *Rice,* 3 *Wend.* 180. *Garwood* v. *Dennis,* 4 *Dall.* 328. *Cowen & Hill's Notes,* 1244, 5, *and cases there cited.*)

IV. The uninterrupted and undisputed possession of the premises by the defendant, claiming title thereto in fee, under the deeds in question, from the death of his said wife in 1829, to the commencement of this suit, raises a presumption of the due execution and delivery of the said deeds, and coupled with the evidence given of the existence and loss of the original deeds, entitled the defendants to read said records in evidence to the jury. (*Garwood* v. *Dennis,* 4 *Binn.* 314. *Schauber* v. *Jackson,* 2 *Wend.* 36, 7. *Bull. N. P.* 254.)

V. The deed from the defendant and wife to Robert James Livingston, is a good and perfect deed, effectual in the law to convey, and did convey the title, and the whole title to the said grantee, and out of the said grantors. It operated as a bargain and sale, or grant, and not as a mere release, and required no antecedent lease to, or term, or estate in, or possession on the part of the grantee, to support it. The consideration expressed in it is sufficient, and its payment cannot be disputed by a party claiming under the grantors. (*Jackson* v. *Fish,* 10 *John.* 456. *Jackson* v. *Root,* 18 *Id.* 60. *Grout* v. *Townsend,* 2 *Hill,* 554; *affirmed,* 2 *Denio,* 336. *Jackson* v. *Alexander,* 3 *John.* 492, 484. *Jackson* v. *Schoonmaker,* 2 *Id.* 234. *Rogers* v. *Eagle Fire Company,* 9 *Wend.* 631. *Cowp.* 598. 5 *Term Rep.* 129. 3 *Preston on Ab.* 113. 11 *Mass. Rep.* 384.) In any event the deed was good as a covenant to stand seised to uses. (*Jackson* v. *Sebring,* 16 *John.* 515.)

VI. The said deed was not inoperative and void upon its face, as contended by the plaintiff's counsel, because professing to be in effect a conveyance from the wife to her husband, but was on the contrary valid and effectual in the law, for that very purpose. (*Jackson* v. *Stevens,* 16 *John.* 110. *Meriam* v. *Harsen,* 2 *Barb. Ch. Rep.* 267. *Jackson* v. *Sebring,* 16 *John.* 515. *Durant* v. *Richie,* 4 *Mason,* 45.)

Lynch *v.* Livingston.

VII. The consanguinity of the commissioner Francis A. Livingston to the said Peter R. Livingston and Robert J. Livingston, did not disqualify him from taking or certifying the acknowledgment of the said Joanna to the first of the said deeds, as contended by the plaintiff's counsel. At common law, relationship of a ministerial officer to the party did not disqualify him from acting, and even in respect to judicial officers, relationship on the part of the judge to a party in the cause, did not, before the revised statutes, of itself disqualify him from sitting on the trial, and only operated thus to disqualify him, when the relationship was so near, as of itself to amount to evidence of partiality and fraud, and the rule was never extended to any other than a *judge* [*eo nomine*] sitting on the trial of a cause. And the provisions of the revised statutes on this subject are restricted to *judges* sitting on the trial of causes. (*McDowell* v. *Van Deusen,* 12 *John.* 356. *Pierce* v. *Sheldon,* 13 *Id.* 191. *Eggleston* v. *Smiley,* 17 *Id.* 133. 2 *R. S. 2d ed.* 275, § 2. 21 *Wend.* 83. *Cruise's Dig. tit.* 35, *ch.* 5. 2 *Kent,* 149, 50.)

VIII. The circuit judge erred in his ruling upon all these points, and a new trial should be awarded.

*By the Court,* EDMONDS, P. J. In the early ages of the common law a married woman could not, by joining with her husband in any deed or conveyance, bar herself or those claiming under her, of any estate of which she was seised in her own right or in her husband's lands. This rule arose out of the principle, doubtless, that the legal existence of the wife was suspended during coverture, and may have been encouraged from the fear that she might be influenced by her husband to part with her rights, in his favor.

But a judgment in a suit brought against husband and wife, in respect to any such estate, was held to be binding upon her, and she could be barred thereby. Hence, when levying a fine, as a means of conveying lands, came into practice, such fine being the judgment of the court upon a concord or compounding of a suit, it was effective to bar the wife's estate, and was adopted as the usual mode of attaining that end.

It was not originally necessary to the levying of a fine that the cognizors should be personally present; it might be done by attorney, and the husband might act as the attorney for his wife. Nor was it necessary that they should appear in court to acknowledge the concord; that might be done before the chief justice out of court, or before commissioners under a *dedimus potestatem.*

This practice led to abuses, inasmuch as there might be false personations of the cognizors, and the wife might be stripped of her property through the instrumentality, and perhaps for the benefit, of the husband. To guard against this, statutes were passed, and rules of court adopted, requiring the cognizors personally to acknowledge the concord, requiring the commissioners to inform themselves by means of some people of credit that the persons who acknowledged a fine before them, were really the parties named in the original writ, and requiring that femes covert should be solely and separately examined, apart from their husbands, and should freely and voluntarily consent to acknowledge the fine.

Out of this ancient practice grew our statute as to the acknowledgment or proof of the execution of conveyances of land. And when we are called upon to determine whether such acknowledgment is a judicial or ministerial act, we may be assisted by thus recurring to the origin of the present practice.

Levying a fine, it is true, was long one of the most solemn, and next to a judgment in an adversary suit, the most solemn and final mode of conveying the title to lands. It was a judgment of the court upon a compounding between the parties; but this was a judgment in form only, not in fact, the agreement between the parties being the substance of the conveyance, and the machinery of the court being resorted to for the sake of publicity and preservation, and least of all was there ever any thing judicial in the acknowledgment by the cognizor. That might be done by attorney and not in person—before commissioners out of court—and if the commissioner should die before certifying the acknowledgment, his executor might certify it in his

Lynch *v.* Livingston.

stead; nay, might be compelled to certify it by certiorari, alias and pluries, and attachment.

Our statute, in substituting for this cumbersome machinery the more simple form of a direct acknowledgment before a specified officer, has evidently not designed to extend or change the character of the act.

What is the officer discharging this duty to adjudge or judicially determine? If he knows the parties, he is simply to certify that they appeared before him and acknowledged the execution. If he does not know them, he is to have evidence satisfactory to him of identity. And so when the execution shall be proved instead of being acknowledged, he is merely to have satisfactory evidence of the identity of the subscribing witness. All else is merely the duty of certifying what takes place before him. That is clearly ministerial only; and if the determining upon the evidence of identity can make the act judicial, it would be ministerial when the executing party, or the subscribing witness is known to the officer, and judicial when not known, and would be ministerial in regard to the very substance of the act, namely, the execution of the conveyance, and judicial merely in regard to one of its incidents, namely, the identity of the party or witness.

Besides, the act, if judicial, must be conclusive until reversed, whereas our statute makes the certificate merely prima facie evidence of execution, and declares that it shall not be conclusive, but it may be rebutted and its force and effect be contested by any party affected thereby.

Again; the statutes declare that if any county clerk shall record a deed not duly acknowledged or proved, and such acknowledgment or proof duly certified, he shall be guilty of a misdemeanor. If the act of acknowledgment or proof is judicial, so that the officer is disqualified from performing it, by reason of consanguinity or affinity to the parties to the deed, then when performed by him it can not be said to be duly proved or acknowledged; nor can he duly certify it. And the clerk must therefore of necessity be compelled, in all cases, under the hazard of a conviction for a misdemeanor, to inquire into

Lynch *v.* Livingston.

the relationship of the judge, or justice, or commissioner of deeds, or mayor, or foreign minister, or charge de affaies, or consul, to some or all the parties to the conveyance, and determine it rightly at his own peril, and that without being afforded any facilities for taking testimony, or procuring evidence on a matter which he must thus blindly determine, at such imminent hazard.

I confess I can not, from my examination, discover any thing to warrant the conclusion that the act of the commissioner of deeds in this case was judicial; but on the contrary, much to incline me to the opinion that it was ministerial only. If this conclusion is correct, then the objection that that officer in this case was related to one of the parties, must fall to the ground, because such consanguinity affects, in any case, judicial functions merely.

The next objection is that the certificate that the commissioner of deeds was such officer, and that his signature was genuine, was not signed by the clerk, but by his deputy.

This depends in a measure on the same principles which have already been referred to, on the other point, and involves the question whether this act of the clerk was ministerial merely. All that the clerk is required to do is to certify under his hand and official seal, that the commissioner was duly authorized to perform the act; that he is acquainted with his hand-writing, and verily believes in the genuineness of his signature. To enable him to perform this duty, the law requires that the appointment of commissioners of deeds should pass through or remain in the county clerk's office, and that their oaths of office shall be filed with him. So that all that he has to do when called on for such a certificate, is to turn to the files of his office and ascertain from an inspection of his records whether the commissioner is in office, and turn to the oath of office, and by comparison of hands certify as to his belief. I can see nothing in all this which is not as purely ministerial as any act which the county clerk can perform. The revised laws of 1813, which were in force when the acknowledgment in this case was taken, required every county clerk to have a deputy. (2 *R. L.* 149.) But that statute did not *define* the duties of the deputy, except

in the case of the death of the clerk. And the question arises what duties or functions could such deputy perform during the lifetime of his principal? Every function, I apprehend, which was merely ministerial in its character, unless expressly restrained by a statute, or unless the performance of the duty was made personal to him.

It would be a very strict construction of the statute, in this case, which should hold that this act of the clerk was personal with him; for all the duties to be performed in the clerk's office are required by the statutes, in substantially the same words, to be performed by the clerk, and such a construction would deprive the deputy of all power of acting for his principal until he was dead. Thus, the statute requires that the clerk shall have the custody of all the books, records, deeds, parchments, maps and papers deposited in his office, and he shall carefully attend to the arrangement and preservation of them. Must he do this personally, and may he not do it by and through his deputy? So, he shall receive and file all papers and documents directed to be filed in his office. Can not his deputy perform this duty? And so on in regard to the great bulk of his duties. It is seldom that any of his duties are of a judicial character or personal to him; and where they are, our statutes have provided a substitute in case of his inability to perform them. Thus he is required to *judge* of the competency of a sheriff's sureties. When he is incapable of performing that duy it is devolved on some of the county judges.

The office of commissioner of deeds was created in 1818, and it was the fourth section of the act creating it which required the certificate " under the hand and official seal of the clerk of the county." At that time the act of 1815 was in force, which authorized the deputy clerks, in certain cases, to certify all rules, proceedings, pleadings and records in the office, to administer oaths of office and assess damages. (*Laws of* 1815, *ch.* 86, *p.* 88.) So that when the law requiring the certificate of a county clerk to an acknowledgment by a commissioner of deeds was passed, a statute was in existence authorizing a deputy clerk to certify every thing in the shape of a record or proceed-

ing in the office. The revised statutes have considerably enlarged this declaration of power, and the provision now is that in certain cases the deputy may perform all the duties appertaining to the office of clerk, except that of deciding on the sufficiency of the sureties of any officer. (1 R. S. 376, § 58.)

The statutes of 1813, 1815 and 1818, were those which were in force when the deed involved in this suit was acknowledged, and when it was recorded; and it is their provisions, not those of the revised statutes, which affect the question before us. Those statutes require the clerk to appoint a deputy, authorize that deputy to perform certain duties of the clerk, and require a clerk's certificate to the acknowledgment.

But those statutes will not aid in the determination of the question before us, for two reasons: 1. The deputy can perform those specified duties only when authorized by warrant under the hand and seal of the clerk, and there was no evidence in this case that the deputy who certified to this acknowledgment was thus authorized by the clerk of Dutchess county. 2. The authority given by the statutes embraces the certifying of rules, proceedings, pleadings and records in the office, and the certificate in question, is not properly either of those.

The question then recurs whether the deputy had the right to perform the act under consideration, by law, independent of the statute.

So far as the acts to be performed were merely ministerial, I entertain no doubt that the clerk could perform them by deputy. Such has been the practice in this state since the organization of our government, following in this respect the practice under the colonial government. Blackstone, in his commentaries, vol. 2, p. 36, says that ministerial offices may be executed by deputy. *Bacon's Ab. tit. Offices, H,* lays it down that such offices as do not concern the administration of justice, but only require skill and diligence, may be executed by deputy. And again, (*Id. L,*) those offices which require only a superintendency, and no particular skill, may regularly be exercised by deputy; and he instances the offices of sheriff, constable, clerk of the outlawries in the common pleas, the marshal of the king's bench, &c.

Having shown that the duties of the clerk in regard to the act under consideration are purely ministerial, it appears that by the common law he had a right to perform them by deputy, and the act of 1815, as well as the revised statutes defining the power of the deputy, are merely declaratory of the common law, so far as they relate to acts merely ministerial, and have no other effect than as they may restrict the performance of ministerial acts, and confer authority to perform some that are of a judicial or personal character.

If the deputy may perform the act in question, it is of very little consequence whether it is performed, as sometimes occurs, solely in the name of the clerk, or, as in this case, in the name of the clerk by his deputy. In either case it is the act of the deputy, and he is authorized to perform it, but it is to be done in the name of the clerk, who is responsible for the act of his deputy. (*Terms de ley*, 239, 40.)

The conclusion, then, at which I have arrived, is that the office of commissioner of deeds is not judicial, and that therefore the disqualification of relationship does not apply to him: and the duty of the county clerk in certifying to the commissioner's certificate is merely ministerial, and may be executed by deputy. And being executed in this case in the name of the clerk, it was properly executed.

The transcripts offered ought then to have been received in evidence, and for the error of the court at nisi prius excluding them, there ought to be a new trial.

It still remains, however, as a question to be disposed of by us, whether if the deed is admissible in evidence, it is good and valid to pass the estate.

It is in effect a transfer of the wife's separate real estate from herself to her husband. This she has a right to do through the medium of a third person, though she can not do it by a direct conveyance to him. Through such medium she may exercise the same control over her real estate, for his benefit, that she could if it was held by a trustee, with a power in her to appoint it to whom she pleased. (*Jackson* v. *Stevens*, 16 *John.* 110. *Meriam* v. *Harsen*, 2 *Barb. Ch. R.* 267.)

It is apparent in this case, from the face of the deed, that it was the intention of Joanna Livingston, thus to convey her estate to her husband. Such is declared to be the purpose of the deed to Robert J. Livingston, and that purpose was executed by a conveyance from him to the husband, bearing even date with the deed from the wife, and apparently executed and acknowledged at the same time. It is, however, insisted that it can not operate to effectuate that purpose; 1. because it is not good as a lease and release, inasmuch as the grantee never had possession; 2. nor as a covenant to stand seised to uses, because there was no consideration of blood or marriage; and 3, not as a bargain and sale, for want of proper and apt words to that end.

It was conceded on the argument that it was not good as a lease and release, but it was claimed that it was valid as a covenant to stand seised to uses. There is, however, a serious difficulty in the way. The consideration of blood or marriage, which alone can sustain a covenant to stand seised to uses, must be between the covenantor and the covenantee; and it is not enough that it exist between the covenantor and the cestui que use. And in this case it does not appear either by the deed, or by the other evidence, that there was any such consideration passing between Joanna L. and Robert J. There was a consideration of marriage between Joanna the covenantor and Peter R. the *cestui que use,* and a consideration of blood between Peter R. and Robert J. the covenantee, but neither exist as between Joanna and Robert J., and therefore we can not hold the deed good as a covenant to stand seised. (*Jackson* v. *Sebring,* 16 *John.* 518. *Smith* v. *Ridley, Cro. Car.* 529. *W. Jones,* 418. 2 *Roll. Ab.* 783, *pl.* 4.)

The deed, if sustained at all, must be sustained as a bargain and sale. Upon this remaining point I have no difficulty. The pecuniary consideration expressed in the deed, its language— " remise, release and quit-claim"—and its evident intention to convey *in præsenti* all the estate of the grantors, all go to show that the deed is good and operative as a bargain and sale.

(*Jackson* v. *Fish*, 10 *John.* 456.   *Jackson* v. *Root*, 18 *Id.* 78. *Jackson* v. *Alexander*, 3 *Id.* 488.)

Upon the whole case, then, there must be judgment for the defendant.

———————— •♦• ————————

SAME TERM.   *Before the same Justices.*