## Case No. 4,764.

### FIELD v. COLUMBET.

[4 Sawy. 523.][1]

District Court, N. D. California. July 22, 1864.

A. M. Crane, for plaintiff.

Williams & Thornton, for defendant.

FIELD, Circuit Justice. Two positions are taken to defeat a recovery by the plaintiff: First. That the premises are embraced in the deed of December, 1854, to Ann Columbet, and in the deed of January, 1859, to the defendant. Second. That if the title remained in Higuera, his deed of July, 1860, was inoperative to pass it, the grantee not being at the time in possession of the premises.

The first position depends upon the construction to be given to the description of the premises in the deeds of 1854 and 1859. The description is identical in both deeds. It gives the boundary as commencing at a point on a certain creek "where the wagon-road passes to the house of Galindo," and after running in different directions as reaching on the north a range of hills designated "Lomas Altas," and proceeding thence "along the Lomas Altas southerly up to the aforesaid wagon-road to Galindo's house," and thence "westerly to the point of beginning," the tract "to contain in limits one mile square in quantity, including the two springs known as the 'Agua Calientes.'"

There are irreconcilable calls in this description, and the only question is, which of them must be rejected? If the line be run "along the Lomas Altas," it will not strike the wagon-road, which stops at Galindo's house; and it will follow for a great distance an easterly and not a southerly course. Yet this is the boundary for which the defendant contends, his theory being that the grantor intended that the line should follow the hills, and strike the line of the wagon-road protracted nearly a mile. On the other hand, if the words "along the Lomas Altas" be rejected, and the line be run southerly, it will strike the wagon-road and will include precisely the one mile square of land and the two warm springs mentioned. I am of opinion that the latter is the true description of the premises deeded. If the grantor had intended to convey the whole tract, as the defendant contends, it is not probable that he would have designated the two warm springs as included in the tract sold, for in that case there could have been no question on the point—each spring would have been more than a mile from the outer

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

boundary of the premises. This opinion is strengthened by the designation of quantity in the deed. The designation of quantity, it is true, will not control the boundaries where they are clearly indicated. Yet where there is doubt as to the true description, it may be properly considered. The boundary for which the defendant contends embraces over fourteen hundred acres—more than double the amount designated in the deeds under which he claims.

The position of the defendant, that the deed to the plaintiff is inoperative to pass the grantor's title, arises from the fact that it is what is termed a quitclaim deed, and the grantee was not in possession of the premises at the time of its execution. The deed recites a money consideration of $2930, and witnesseth that the grantors "have remised, released and quitclaimed, and by these presents do remise, release and quitclaim," to the grantee the land in question, and all their "estate, right, title and interest therein," to have and to hold the same to the grantee and his heirs forever. A deed of this character would be sufficient to pass the interest of the grantors under the statute of uses. It was so held by the supreme court of New York, in Jackson v. Fish, 10 Johns. 456, and the ruling has ever since been followed in the courts of that state. Lynch v. Livingston, 8 Barb. 485; Id., 2 Seld [6 N. Y.] 422.

In this state, the statute of uses has not been in terms adopted, and it is unnecessary to express any opinion whether it is to be considered in force as part of the common law. The statute of conveyances renders the deed as effectual for every purpose to pass the title or right of the grantors as it would have been had the statute of uses been expressly adopted. By the common law, where the right of property and the possession were united in the same person, a conveyance could only be made by feoffment with livery of seisin. But where the right of property and the possession were in different persons, a transfer of the estate could be made to the party in possession by a deed of release. The operative words of such release were the same as those used in the deed under consideration, "remise, release and quitclaim." The release operated in various ways according to the character of the possession and interest held by the releasee— sometimes by passing the estate or right of the releasor, sometimes by extinguishing his claim, and sometimes by enlarging the estate of the releasee. Without further particularizing the manner of its operation, it is sufficient to say that the deed divested the releasor of whatever estate and right he possessed, and transferred the same to the releasee, except where, from the nature of the interest or right released, the instrument could operate only by way of extinguishment, as in case of the release of a rent charge, or a common of pasture to the terre-tenant.

Thus Sheppard, in his Touchstone, in defining the instrument, says: "A release is the giving or discharging of the right of action which a man hath, or may have or claim, against another man, of that which is his. Or it is the conveyance of a man's interest or right which he hath unto a thing to another that hath the possession thereof, or some estate therein." 1 Shep. Touch. 320. And again, the same writer says: "Lands, tenements and hereditaments themselves may be given and transferred by way of release; and all rights and titles to lands may be given, barred and discharged by release; and so also may rights and titles to goods and chattels." Id. 321. The only condition required for the efficacy of the deed was that the releasee should be in the actual possession of the premises. Cruise, Dig. tit. 32, "Deed," §§ 18–39.

The operative words of the instrument are as significant and potential now as at the common law, and their efficacy under our statute of conveyances is not dependent upon the fact of possession by the releasee. The statute allows the transfer of real property and of interests therein, whether the grantor or grantee be in or out of possession. It designates no form in which the conveyance shall be made, except that it shall be made by deed. Any words in a deed indicating an intention to transfer the estate, interest or claim of the grantor, will be a sufficient conveyance, whether they be such as were generally used in a deed of feoffment, or of bargain and sale, or of release, irrespective of the fact of possession of grantor or grantee, or of the statute of uses. The only practical difference in deeds in use in this state arises from their different operation under the statute upon subsequently acquired interests, or from the covenants implied by particular terms. The quitclaim deed only passes such interest as the grantor possessed at the time, and has no operation whatever upon subsequently acquired interests. By its execution, the grantor does not affirm the possession of any title, nor is he precluded from subsequently acquiring a valid title, and holding it for his own benefit. The subsequently acquired title does not inure in any respect to the benefit of the grantee in the quitclaim; and herein lies its distinction from the deed in fee-simple absolute under the statute, or the deed with covenants. It is equally effectual with either of the other forms in transferring existing interests. Such is the common opinion of the profession, and in consequence the quitclaim has become the form most generally in use. To hold that it has no efficacy, except where the grantee is at the time in possession, would disturb titles to property of the value of millions. Sullivan v. Davis, 4 Cal. 291, and Russell v. Coffin, 8 Pick. 142.

Judgment must be rendered for the plaintiff, and it is so ordered.

Judgment was accordingly entered for the plaintiff, and under it he was placed in possession. He then brought an action against the defendant for the use and occupation of the premises recovered from the time his title accrued as established in that case, and the time he was thus placed in possession; and also for the value of a building removed by the defendant from the property. The action was what was technically called an action for mesne profits, to which was added a claim for injuries to the freehold.

The defendant in his answer set up that he entered upon the premises in good faith under his deeds, and had made valuable improvements, the value of which he asked to have set-off against the claim of the plaintiff. The statute of the state provided that in actions for the recovery of real property, "where damages are claimed for withholding the property recovered upon which permanent improvements have been made by a defendant, or those under whom he claims, holding under color of title adversely to the claims of the plaintiff in good faith, the value of such improvements shall be allowed as a set-off against such damages."

The case was tried with a jury at the July term of 1865, the same counsel appearing for the parties as in the original action.

FIELD, Circuit Justice, charged the jury, among other things, as follows:

1. That although in this state there was a statute which allowed a plaintiff to unite in an action for the recovery of land a claim for damages for withholding the property, or for waste committed thereon, and for the rents and profits thereof, and in practice claims of this character are usually united in the same action with a claim for the land, as it was found to be more convenient and less expensive than separate actions, and equally effectual to enforce the rights of the plaintiff, yet that such union was not essential, but that distinct actions might be brought for the land and for the damages.

2. That to entitle the defendant to set-off the value of his improvements on the land recovered against the plaintiff's claim for damages, his holding of the premises must have been adversely to the claim of the plaintiff "under color of title;" that a holding in good faith was of itself not sufficient; and that by color of title was meant the semblance or appearance of title. Wherever any instrument by apt words of conveyance from grantor to grantee, in form, passed what purported to be the title, it gave color of title. If one entered under a deed purporting to transfer the title, he entered under the color of title, although in point of fact the title was never in the grantor.

3. That the defendant not having pleaded the statute of limitations, which prescribed three years as the term within which actions for trespass upon real property must

be brought, and the action for mesne profits was considered one of that kind, the jury were not restricted to a consideration of the use and occupation of the premises for that period in the estimation of damages.

The jury found for the plaintiff.